Wilde, J.,
delivered the opinion of the Court. Several objec *383 tions have been made to the verdict in this case ; the principal of which is founded on the supposition, that the action is not well brought; it being assumpsit on an express promise, in which, it is said, all the contracting parties have not been joined.
It is not denied, that, in point of fact, the defendant did contract with a committee of the town of Watertown. Prima, facie, therefore, the evidence is sufficient to sustain the declaration. But, as this committee were, by the statute of 1797, c. 75, authorized to act, as well in behalf of the inhabitants of Weston and Waltham, as of the plaintiffs, and as those towns by the statute have a joint interest in *the fishery, the subject-matter of the contract; it has been contended, that the committee must be supposed to have acted as agents of the three towns, there being no express evidence in the case, contradicting such a supposition.
There would be much weight in this argument, taking into consideration only the statute, and the facts immediately connected with the contract. But it must be recollected, that, in 1801, the three towns came to an agreement, whereby the plaintiffs were to have an exclusive fishery within the limits of Watertown ; they taking upon themselves the burden of maintaining the bridge over Charles river, the expense of which had before been chargeable to the three towns. To carry this agreement into effect, indentures of release were duly executed, whereby, among other things, “ the inhabitants of Waltham, and Weston severally released and quitclaimed all their right to the said fishery, within the limits of Watertown, to the inhabitants of that town.”
The validity of this release does not appear to have been questioned by the parties interested. The inhabitants of Watertown have continued to lease the fishery within the limits of their town, from year to year, until 1811, when the contract was made which is the foundation of the present action. Now who were the contracting parties ? The committee were chosen by the inhabitants of Waterr town to lease the fishery for them. No claim of Weston or Waltham was interposed ; for they were satisfied with the arrangements of 1801. Can it then be doubted, that the committee intended to execute their commission, as faithful agents of the town by whom they were appointed ? And must not the defendant, an inhabitant of the town, and who, as was suggested at the argument, has held several important offices in it, have so understood it ? Or can any one suppose it was their intention to admit the inhabitants of Weston and Waltham to a share in a beneficial contract to which they made no claim ? It has been said, that such an intention is to be collected from the * record of the proceedings of the committee. It is true, the towns of Weston and Waltham are mentioned in the recital, and their right to choose agents to join them seems to be *384 admitted. But this part of the record, if so it may be called, will not support the inference made by the defendant’s counsel ; as it may well be supposed to relate to the regulation of the times and places for taking the fish, in which, it must be admitted, the three towns have still a joint interest and authority.
As to the facts, therefore, we think there can be no doubt ; for, were it true, as has been argued, that the release of 1801 was inoperative, yet there is no evidence that the parties so considered it. Nor is there any ground to believe that the committee of Watertown undertook, gratuitously,.and against their interests,, to act as the agents of Weston and Waltham. On this point, the evidence is entirely satisfactory to us, and well supports the verdict.
Another objection has been made, involving a question of law, namely, that the contract is not valid, supposing the parties to the suit to be rightly named.
It has been said, that the contract was illegal, being in contravention of the statute of 1797, c. 75. This objection was not much pressed, and is certainly without foundation. The statute contains no prohibitory provisions ; and there is no pretence for saying, that the contract, whoever may have been the parties, is illegal.
But it is urged, that the contract is not valid, and ought not to be enforced ; because, as it is said, the plaintiffs had not the right, or the exclusive right, to the fishery, which was supposed by the parlies when the contract was made.
The answer which has been made to this argument is, we think, conclusive. The defendant, having enjoyed the fishery by the permission of the plaintiffs, cannot be permitted, on this ground, to excuse himself from the payment of the stipulated rent. Such an evasion of a fair contract would be gross injustice, and a reproach to the law, * if it were allowed. But the law is not liable to such a reproach. It is a well settled rule, that the tenant shall never be suffered to impeach his landlord’s title. Thus, in an action for use and occupation, which is analogous to the case under consideration, the plea of nil habuit tenementis is not admissible. This rule is founded in good sense, wise policy, and the plainest principles of fair dealing. The plaintiffs’ right to the fishery cannot, then, be properly brought in question in this action. It is immaterial whether they have an exclusive right, a right in common, or no right at all.
But, as this may be the subject of future doubt and controversy, we have taken it into consideration ; and are of opinion, that the claim of the plaintiffs may be well supported on legal principles.
The statute of 1797, c. 75, has a double aspect. It disposes of a free fishery; and provides also for the regulation of the time, place, and manner, of taking the fish. No principle of law s violated by *385 considering the first clause of the act as a grant of a franchise to the three towns, which may clearly be the subject of an assignment or release ; provided the object or condition of the grant be not thereby infringed. The clause regulating the taking of the fish we consider as partaking of the character of a public act, in which others, besides the three towns, may have an interest. The terms of the statute, therefore, furnish the only rule for this regulation ; nor is it competent for those towns to substitute a new rule in its place.
From this view of the subject, we can perceive no reason for disturbing the verdict; and judgment must, therefore, be entered upon it for the plaintiffs.