Tirghman C. J.
after briefly stating the case, and readIng the first point proposed, and the opinion of the Court below on it, delivered the opinion of this Court, as follows This was an abstract question which the Court are never bound to answer, without applying the general principle of law to the case before the jury, and making such observations and distinctions as are necessary. Thus, after saying that this question, might in the abstract, be answered in the' negative, the Court went on to explain to the jury, that under .certain circumstances, the same question might be answered in the affirmative. A warrant dated- in June, 1763, and totally abandoned until September, 1812, might give no right, and yet it might give a perfect right, if it had been followed up in a reasonable time, by a survey which had been destroyed without the fault of the warrantee, or it might give a right even without a survey, if it described the land with reásonable certainty, and the warrantee took possession under it, designated the boundaries of the land in such a manner as to be well known to his neighbours, and retained a continued possession until the time of his survey in 1812, and more especially it would entitle the plaintiffs to recover against the defendants, if they came to the occupation of the’ land in dispute, as tenants of the plaintiffs. Now this is just what the Court said, and, in my opinion, with great propriety. In the case of Blaine v. Johnson, 3 Binn. 103, it was laid down for law, that a notorious and well established possession, under a location descriptive of the land, was. an appropriation sufficient to support an ejectment. Whether there.had been such a possession in the present ^instance, was a question for the jury, but the charge of the Court was, in point of law, correct. ,
2. [Here the Chief Justice read the second question, and the answer of the Court.]
If the proprietor uf a surveyed tract, passes over his line, and cuts wood upon the vacant land of the Commonwealth, so far from acquiring a right to the vacant land, he is to be considered as a trespasser. The second question was, therefore, answered rightly. But after answering it, the Court proceeded to say, that “ perhaps, an inclosed piece of land might be defended against an intruder without right.” This is surplusage. 'An opinion was not asked on such a case. *472 The law, however, was not mistaken. Where both are trespassers, potior est conditio defendentis.
3. [Here he read the third question, and the answer of the Court.] J
The draft of James Moore’s larger tract, called for his other land, (the land in dispute,) on one of its lines, where Ephraim Blaine has a survey; therefore, the defendants inferred, that' the land in dispute was taken away by Blaine’s survey, and the plaintiffs had no right to shift it; and they insisted, that the plaintiffs were estopped from denying what was asserted on the face of James Moore’s draft. In this they went too far. The draft is evidence, but not conclusive. It is the act of the surveyor, who may possibly have been mistaken as to the owner of the adjoining tract. Besides, there was a particular reason why the plaintiffs should not be concluded from locating the land in dispute as they have done; part of it does, in fact, adjoin James Moore’s larger tract, on the line which calls for it, although Blaine’s survey, also, adjoins another part of the same line. After all, the situation of the land in dispute, and whether it agreed with the description in the warrant, were facts to be decided by the jury, and the Court submitted it to them.
4. [Here he read the fourth question, and the answer of the Court.]
This point is too plain to admit of argument. A tenant who contrives to deprive his landlord of all the benefit of possession, under a fraudulent pretence of giving it up, cannot be said to have complied with his duty.
5. [Here his honour read the fifth question, and the answer of the Court.]
In this question, the defendants assume the fact of William Graham, jun. not being a tenant. The Judge says, that no such man as William Graham, jun. was mentioned by a single witness in the cause, nor was there any evidence of title in him. But, if he came in, under Eccles, who came in under William Graham, jun., who was the tenant of the plaintiffs, he is in no better situation than the tenant, and cannot defend his possession against the landlord. And at all events, after the long possession of the plaintiffs under James Moore’s 50 acre warrant, (if th'e jury should think the warrant descriptive, and should believe the plaintiffs witnesses who swore to the *473 possessipn,) the plaintiffs would be entitled to recover. This question is not answered so distinctly as it might have been. Yet as it is in substance said, that William Graham, jun. .could not withstand the plaintiffs’ action, and considering the situation in which he stood, it appears, that the plaintiffs were entitled, to recover against him, the jury could not have been misled to the injury of the defendants; and, therefore, there is no cause for reversing the judgment, for any defect in this part of the opinion.
Upon the whole of this case, I am of opinion, , that the judgment should be affirmed.
Judgment affirmed.