INHABITANTS OF EASTHAM *vs.* CORNELIUS ANDERSON.

Barnstable.   Jan. 25. — Feb. 29, 1876.   ENDICOTT & DEVENS, JJ., absent.

A warrant for a town meeting contained an article, " to see if the town will sell the Herring Brook for three years or more, as the town may deem proper, to the highest bidder." Under this article, Herring Brook was sold to the defendant for three years, for $170 a year, he being the highest bidder. *Held,* in an action by the town to recover the price agreed, in which it appeared that the defendant had enjoyed the fishery, that the sale by the town was in the nature of a lease, and that the defendant was estopped to deny the title of the town or its right to sell the fishery, unless he was evicted or interrupted by some one having a paramount title ; and that the questions how far the brook was understood to extend, and whether it was navigable where the defendant took fish, were for the jury.

The St. of 1871, *c.* 281, § 2, providing that " the proprietor of any unnavigable tidal stream, where the same empties into salt water, and in which fishes are lawfully cultivated or maintained, shall control the fishery of said stream within his own premises, and also beyond and around the mouth of said stream, so far as the tide may ebb : provided, it does not ebb more than eighty rods," applies only to cases where the waters of a stream are inclosed by the proprietor for the purpose of cultivating fishes.

The lessee from a town of the right of fishery in a brook is liable for the stipulated rent, if he has enjoyed the premises, notwithstanding the statute of frauds, although his promise is not in writing.

CONTRACT.   The declaration was as follows : "And the plaintiff says, that, being the lawful owner of a certain herring fishery in said town of Eastham, which by law the plaintiff had the right to manage, control, have, use and dispose of, the defendant purchased of the plaintiff the right to have said fishery, and the beneficial use of said fishery, and the profit to take the fish in said fishery for the fishing season of the year 1873, and agreed to pay therefor to the plaintiff the sum of $170, which the defendant owes the plaintiff."

The answer contained a general denial, and also denied that the plaintiff was ever the lawful owner of any herring fishery in the town of Eastham ; that the plaintiff ever had the right to manage, control, have, use or dispose of any herring fishery in said town ; that he purchased of the plaintiff the right to have any fishery or the beneficial use of any fishery or the profit, or the right to take fish in any herring fishery in said town of Eastham for the fishing season of the year 1873.   The answer also set

up that the herring fishery, alleged by the plaintiff to have been purchased of it by the defendant, belongs to and is owned by the heirs of Joshua Cole of said Eastham, deceased; that the sale of the herring fishery, alleged to have been made to him by the plaintiff, was not in writing, and that said alleged sale was void under the Gen. Sts. *c.* 105, § 5.

Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions in substance as follows:

The plaintiff introduced as evidence of the sale the following extracts from the records of the town of Eastham: "March 3, 1873. To see what the town will do with the Herring Brook. Voted to choose a com. of five to confer with the owners of the land near the Herring Brook. Voted that Philip Smith and Joshua Cole be added to the com. of last year on Herring Brook. March 24, 1873. To see if the town will sell the Herring Brook for three years or more, as the town may deem proper, to the highest bidder." The plaintiff also introduced the testimony of the auctioneer who sold the same in open town meeting, "that the defendant was the highest bidder at such sale, bidding $170 therefor, and that the same was struck off to him," and this was the only evidence of said sale.

The plaintiff also introduced evidence that the defendant had taken the fish from said Herring Brook, without interruption, during the fishing season of 1873, and also evidence that the most of the fish had been usually taken and were taken by the defendant below the edge of the bank or rising where the Herring Brook empties into the salt water or bay, and where the tide flowed into the outlet of said brook below the bank where the brook runs out, and continued through the beach shore and flats below the bank as the tide ebbed. The plaintiff also offered evidence tending to show that the brook and the fishing therein had existed as long as the memory of the oldest witness who was called, being seventy-four years of age, and there was evidence that the owner of the land through which the brook runs had never exercised or claimed any right of several fishery there before said sale. The plaintiff introduced no evidence of any right or title of said town of Eastham in said Herring Brook, except the foregoing.

The defendant introduced evidence tending to show that he was prevented by one Joshua Cole, Jr., who claimed with other devisees of Joshua Cole, deceased, to be the owners of the premises over which, or through which, said brook runs from the pond to the shore or bay, and also evidence, that was not controverted, that he was forbidden by said Joshua Cole, Jr., from paying the town, and told by said Cole that he, Cole, should hold him responsible therefor; but it was controverted that he was prevented from taking the fish in said brook, and it was contended by the plaintiff that the intervention of Joshua Cole, Jr., was only by some arrangement between him and the defendant with a view to defeat the claim of the town in this action. The defendant also introduced evidence of the title of said Joshua Cole, Jr., and said other devisees to the land over which, or through which, said Herring Brook runs from the pond to the bay, as far as the edge of the bank where said bank meets the bay at high water. This evidence of the title of said Joshua Cole, Jr., and said other devisees as above stated, was not controverted. The defendant also introduced evidence that said Herring Brook is dry for some three months of each year, and also that the tide only flows into said brook above the rising or bank at extreme high water.

The defendant requested the court to instruct the jury:
"1. That the plaintiff, under the pleadings and the evidence, must satisfy the jury that it owned or had title to said brook, and the right to manage and control the taking fish in the same, or it could not recover.

"2. That there was no evidence that the plaintiff owned or had any title to said brook.

"3. That as a matter of law, on the evidence, the term Herring Brook only embraced that portion between the pond and the edge of the bank or rising where the same empties into the bay.

"4. That there was no evidence that the said Herring Brook was a navigable stream.

"5. That if the jury were satisfied that the brook in question was an unnavigable stream, then the owner of the land over or through which the same runs has the exclusive right to take the fish within his premises and beyond and around the mouth of said stream, where the same empties into the salt water, as far as the tide ebbs and flows, provided it does not ebb more than eighty

rods, unless the town proved title to the same, either by legisla-tive grant or otherwise."

The judge refused to give any of the foregoing requests for in-structions; and instructed the jury, against the objection of the defendant, that said sale by the town to the defendant was in the nature of a lease, and that under the pleadings and evidence the plaintiff was not bound to prove that it owned or had any title in said brook, or any right to manage, control or sell the right to take the fish therein; that the plaintiffs were entitled to a verdict upon the evidence in the case, unless the defendant satisfied the jury, upon the whole of said evidence, that he was prevented from taking the fish from said brook by the lawful owner or owners of said land and brook, and that the burden of proof was upon the defendant to show that he was so prevented; and declined to rule that the act of the lawful owner forbidding the defend-ant to pay the town, as he would be held responsible, would con-stitute such prevention, but left the question to the jury to deter-mine whether he was so prevented by the owner; that the sale of said Herring Brook to the defendant, if proved, was in the nature of a lease, and that the defendant was estopped under the pleadings in this case from denying that the town of Eastham had any title in said brook, or the right to sell the fishery in the same; but if he took the fish, he must satisfy the jury, the bur-den of proof being on him, that he was prevented by the owner of said brook from taking the fish therein, and compelled to take the same under the owner of the land, and did actually take the same under said owner.

The defendant also requested the judge to instruct the jury that said sale of said brook to him was void under the statute of frauds, the same being for an interest in lands, and not in writing. The judge refused so to instruct the jury.

There was no other evidence in the case material to the fore-going rulings and requests to rule. The jury found for the plain-tiff; and the defendant alleged exceptions.

*H. P. Harriman*, for the defendant.

*G. Marston*, for the plaintiff.

MORTON, J. The warrant for the meeting of the plaintiff town held March 24, 1873, contained the article, "To see if the town will sell the Herring Brook for three years or more, as

the town may deem proper, to the highest bidder." **Under this** article, Herring Brook was sold in open town meeting to the defendant for three years, for $170 a year, he being the highest bidder. Though the warrant and the record speak of the sale of Herring Brook, there is no question that the right of fishing in the brook was intended and understood as the subject of the sale. It appeared at the trial that the defendant had taken the fish from Herring Brook during the fishing season of the year 1873, and the presiding judge ruled that the sale by the town was in the nature of a lease, and that the defendant was estopped to deny the title of the town or its right to sell the fishery, unless he was evicted or interrupted by some one having a paramount title.

We are of opinion that this ruling was correct. The case of *Watertown* v. *White,* 13 Mass. 477, is decisive of this point. That was an action, to recover the rent of a fishery, brought upon a contract similar to that proved in the case at bar, and it was urged, as one of the grounds of defence, that the plaintiff had not the right, or the exclusive right, to the fishery which was supposed by the parties when the contract was made. The court say : " The answer which has been made to this argument is, we think, conclusive. The defendant, having enjoyed the fishery by the permission of the plaintiffs, cannot be permitted, on this ground, to excuse himself from the payment of the stipulated rent. Such an evasion of a fair contract would be gross injustice, and a reproach to the law, if it were allowed. But the law is not liable to such a reproach. It is a well settled rule, that the tenant shall never be suffered to impeach his landlord's title. Thus, in an action for use and occupation, which is analogous to the case under consideration, the plea of *nil habuit tenementis* is not admissible. This rule is founded in good sense, wise policy, and the plainest principles of fair dealing. The plaintiff's right to the fishery cannot, then, be properly brought in question in this action. It is immaterial whether they have an exclusive right, a right in common, or no right at all."

In the case at bar, therefore, the defendant was estopped to deny the plaintiff's right to lease the fishery, and the first and second requests of the defendant for instructions, which were to the effect that the plaintiff must prove its title, were properly refused.

The third and fourth requests involve matters of fact, and were properly refused. It was for the jury to say what was understood by the term " Herring Brook " in the contract, and whether it was navigable.

The fifth request was also rightly refused. It was based upon the theory that the owner of the land on the brook has the exclusive right to take fish around the mouth of the stream as far as the tide ebbs and flows, provided it does not ebb more than eighty rods. The defendant relies in support of this claim upon the St. of 1871, *c.* 281, but that statute applies only to cases where the waters of a stream are inclosed by the proprietors for the purpose of cultivating fishes, and has no application to the case at bar. The only other exception insisted on is that to the refusal of the court to rule that the sale or lease to the defendant was void under the statute of frauds, because there was no memorandum of it in writing, signed by the defendant. The ruling of the court was correct. As in other cases of parol leases, the defendant having enjoyed the premises, his promise to pay the stipulated rent, if by parol, is not void by the statute of frauds.

As no error in matter of law is shown, the plaintiff is entitled to retain its verdict.                *Exceptions overruled.*