# CHARLESTON

## STOVER v. DAVIS.

Submitted January 24, 1905.    Decided February 14, 1905.

1. LANDLORD AND TENANT—*Proof of Title—Unlawful Detainer.*
    In an action of unlawful detainer brought by a landlord, no proof of title is required, since if a tenant has once recognized the title of the plaintiff and treated him as his landlord by accepting a lease from him he will not be permitted to dispute his landlord's title.  (p. 200.)

2. UNLAWFUL DETAINER—*Landlord and Tenant.*
    Where the lease is by parol it is not necessay for the landlord to give any evidence of his title anterior to the lease; an acknowledgment by the defendant that he went into possession under the plaintiff is sufficient to entitle plaintiff to recover the possession.  (p. 201.)

3. LANDLORD AND TENANT—*Attornment.*
    A tenant in possession cannot disclaim his landlord's title without surrendering possession to him.  He cannot collude with, and attorn to another claiming a hostile title to the prejudice of his landlord.  (p. 202.)

4. LANDLORD AND TENANT.
    The rule is well settled in this state that a tenant is not allowed to dispute his landlord's title after having accepted possession under him.  (p. 206.)

Error to Circuit Court, Raleigh County.

Action by A. L. Stover against Lewis Davis.  Judgment for plaintiff, and defendant brings error..

*Affirmed.*

W. L. ASHBY and PRICE, SMITH & SPILLMAN, for plaintiff in error.

BROWN, JACKSON & KNIGHT, J. W. McCREERY and ANGUS W. McDONALD, for defendant in error.

McWHORTER, JUDGE:

This was an action of unlawful detainer brought by A. L. Stover against Lewis Davis to recover the possession of a tract of fifty acres of land in Raleigh county.  About the last of May or the first of June, 1902, defendant Davis was placed in possession of the house and premises to hold

possession for and under Stover, until about the first of
March 1903. When possession was demanded of him by
Stover Davis replied "Whenever you can show a better
title than Mr. Crawford, that I have leased it from I will
give you possession, but not before." Stover then brought
his action of unlawful detainer before a justice of the peace.
Defendant Davis filed his verified answer to the complaint of
plaintiff stating that the title would come in question. The
plaintiff filed an affidavit denying the fact stated in the
answer of defendant, that the title of said real estate would
come in question. The justice heard the evidence and ren-
dered judgment for plaintiff for the possession of the prem-
ises and for plaintiff's costs. The defendant appealed to the
circuit court. At the June term, 1903, the parties waiving
a jury submitted all matters of law and fact to the judgment
and determination of the court. The court having heard
the evidence took time to consider of its judgment, and on
the 28th day of July rendered judgment for plaintiff for the
recovery of the possession of the premises and awarded a
writ of possession therefor and rendered judgment for costs
of the suit against the defendant and his sureties on his appeal
bond and the defendant moved the court to set aside the judg-
ment and grant him a new trial because of errors committed
in the trial of the action to his prejudice as shown in the
record, and further because said judgment was contrary to
the law and the evidence; which motion was overruled and the
defendant excepted. On the trial of the case the defendant
took a bill of exceptions to the several rulings of the court
excepted to, which was made a part of the record, which
bill of exceptions included all the evidence introduced in the
case at the trial. Plaintiff proved upon the trial that he had
had actual possession of the premises in question and had
paid taxes thereon ever since the 28th of August, 1890, at
which time he received from Asel Ford and wife a general
warranty deed for the premises, which was duly recorded
October 9, 1890, and under which he had held possession
ever since. Upon the trial it was admitted by the defendant
that he was then in possession of the property described in
the summons as amended, and was so in possession at the
time of the institution of the suit. There are exceptions
taken to the ruling of the court in overruling objections to

the introduction of the deeds on either side and to the motion to quash the summons which was permitted to be amended in the court; but none of these exceptions are relied upon, and as stated by counsel for defendant in their brief "The only question is, could Davis, under the circumstances above set out, defend this action?" And say: "First, that in this case actual notice was given to the landlord of the adverse holding. Second, while, as a general rule when the relation of landlord and tenant is once established the tenant cannot dispute his landlord's title, yet this rule is subject to many qualifications and exceptions as well and firmly fixed as the rule itself." And cite *Voss* v. *King*, 33 W. Va. 240; *Emerick* v. *Tavenner*, 9 Grat. 220; *Campbell* v. *Fetterman*, 20 W. Va. 398; *Willison* v. *Watkins*, 3 Pet. 33; *Alderson* v. *Miller*, 15 Grat. 279. In the case of *Voss* v. *King*, the defendant was in possession at the time he accepted the lease from Voss and therefore did not acquire his possession from the landlord. JUDGE SNYDER in rendering the opinion of the Court, at page 245 says, this being the case "whether we apply the rule that a tenant *who acquires* his possession from the landlord must surrender his possession before he can assert an adverse claim, or the other rule, that, without an actual surrender of the possession the tenant may, after a positive disclaimer and notice to the landlord set up an adverse title either in himself or a third person, the defendant in this case was entitled to prove that he had given notice to Voss and that he was holding adversely to his title." And in the latter event he ought to be permitted to show to the satisfaction of the jury that more than three years before the action was commenced he had disclaimed to hold under Voss' title; that Voss or those claiming under him had notice of such disclaimer, clearly holding by implication that the possessory action could be brought within the three years' limitation even under the last rule mentioned where the possession was not acquired directly from the landlord. In *Emerick* v. *Tavenner*, 9 Grat. 220, decided in 1852, Judge Lee thoroughly discusses the relation of landlord and tenant. In that case Emerick, in possession claiming under a patent of 1839, accepted for a year, a lease from Tavenner, an adverse claimant out of possession. In 1847, Tavenner having to that date made no further claim, Emerick

conveyed the land to Alton; Tavenner then demanded rent of Emerick who refused to pay, and possession being demanded was also refused when Tavenner brought his action of unlawful detainer. At page 223 the opinion says: "The doctrine is well settled that if a privity of estate have existed between parties to an action, proof of title is ordinarily unnecessary; for a party is not permitted to dispute the original title of him by whom he has been let into possession. A tenant cannot be permitted to question or impugn the title of his landlord during the continuance of the tenancy, nor until he has restored the possession or done what would be regarded as equivalent; nor can he be permitted to deny that the possession so received was the possession of his landlord. And the rule is extended to the case of a tenant acquiring the possession by wrong against the owner, and to one holding over after the expiration of his lease; and it applies whether the question arises directly in an action brought against the tenant to recover the possession, or in a collateral form in some other action. *Wood* v. *Day*, 7 Taunt. R. 646; *Fleming* v. *Gooding*, 10 Bing. R. 549; *Taylor* v. *Needham*, 2 Taunt. R. 278; *Cooke* v. *Loxley*, 5 T. R. 4; *Codman* v. *Jenkins*, 14 Mass. R. 95; *Inhab. of Wattertown* v. *White*, 13 Mass. R. 477; *Galloway's Lessee* v. *Ogle*, 2 Binn. R. 468; *Graham* v. *Moore*, 4 Serg. & Rawle 467; *Willison* v. *Watkins*, 3 Pet. R. 43; *Marley* v. *Rodgers*, 5 Yerg. R. 217; *Wilson* v. *Smith*, *Id.* 379; *Jackson* v. *Dobbin*, 3 John R. 223; Crabbe on Real Property 327; Archbold on Landlord and Tenant 219. Nor is the rule varied where the tenant is in actual possession of the premises at the time he accepts a lease; he thereby as effectually recognizes the title and possession of the lessor as if he had entered and taken possession under and by virtue of the lease itself. *McConnell* v. *Bondry*, 4 Munro's R. 392.

The same rule is recognized in equity. *Wilson* v. *Lord Townsend*, 2 Ves. Jr. R. 693; *Attorney General* v. *Lord Hotham*, 3 Russ. R. 415.

"When once this relation of landlord and tenant is established by the act of the parties, it attaches to all who may succeed to the possession through or under the tenant, whether immediately or remotely, the succeeding tenant being as much bound by the acts and admissions of his pred-

ecessor as if they were his own.   *Doe* v. *Mills*, 2 Adolph.
and Ell. 17; *Doe* v. *Austin*, 2 Moore and Scott, 107; *Doe* v.
*Burton*, 9 Carr. & Payne, 254; *Doe* v. *Lady Smythe*, 4
Maule and Selw, 367; *Jackson ed. Vandeuzen* v. *Scissam*,
3 John R. 499.    It has been suggested, however, that al-
though a party succeeding a tenant in the possession is to
be presumed to have taken as tenant also, yet that he may
repel that presumption and escape being concluded by the
acts and admissions of his predecessor, by showing that he
did not take in that character, as by producing a deed from
the tenant purporting (as in this case) to convey the premises
in fee.    But the contrary has been expressly decided, and it
has been held that though the party purchase and enter upon
the premises under an absolute conveyance, he still, in judg-
ment of law, is deemed to have entered as the tenant of the
landlord, and to hold the possession subject to all the duties
and responsibilities appertaining to that character."    Much
more might be quoted from this very able opinion, which
would be applicable to case at bar.    In 2 Taylor's Landlord
and Tenant, section 629: "The rule is well settled that a
tenant is not allowed to dispute his landlord's title after hav-
ing accepted possession under him."    Section 705, *Id.*    "No
proof of title is required in this action when it is brought by
a landlord, since if a tenant has once recognized the title of
the plaintiff and treated him as his landlord, by accepting a
lease from him, or the like, he is precluded from showing
that the plaintiff had no title at the time the lease was
granted, and that whether the action be debt, *assumpsit*,
covenant or ejectment, for it is a general rule that a tenant
shall never be permitted to controvert his landlord's title, or
set up against him a title acquired by himself during his
tenancy, which is hostile in its character to that which he
acknowledged in accepting the demise.    And this rule ex-
tends to tenant holding over, as well as to an under tenant,
assignee or other person claiming under the lessee; and is
applicable to every species of tenancy, whether for years, or
from year to year, at will, or by sufferance.    As a tenant
is not permitted to resist the recovery of his landlord, by
virtue of an adverse title acquired during the tenancy, if
he takes a lease from a third person it is void, and cannot
work an adverse possession against his landlord; for the

possession of a tenant is the possession of his landlord." And cases there cited. Also section 706, *Id.* "Where the lease is by parol it will not be necessary for the landlord to give any evidence of his title anterior to the lease, for a holding under a plaintiff and the expiration of the tenancy are the only things to be proved in ordinary cases. Even an acknowledgment by the defendant that he went into possession under the plaintiff is sufficient to entitle him to recover,—it being a simple matter of fact for the jury to determine, whether the defendant held under the plaintiff or not." In 1 McAdam on Landlord and Tenant, section 32, it is said: "When the tenant remains in possession after the expiration of the original term by permission of the landlord the implication is that he continues in possession under the conditions of the former demise." See *Hobbs* v. *Batory*, 86 Md. 68; *Kendall* v. *Moore*, 30 Me. 327; *Commissioners* v. *Clark*, 16 Tiff. (N. Y.) 251. In *Schuyler* v. *Smith*, 51 N. Y. 309, it is held: "That a tenant for one or more years holding over after the expiration of his term, the landlord has the option to treat him as a tresspasser or as a tenant for another year upon the terms of the prior lease, so far as applicable, and the right of the landlord to elect to continue the tenancy is not affected by the fact that the tenant has refused to renew the lease, and has given notice that he has hired other premises. It is not in the power of the tenant alone to throw off the character thus imposed upon him." And it is held to the same effect in *Bacon* v. *Brown*, 9 Conn. 334. In 1st McAdam on Landlord & Tenant, sec. 174: "Where a lease is made for a certain definite term, the tenancy will expire with the term. In such cases, notice to quit will not be necessary to dissolve the relation of landlord and tenant  *   *   * where the term is definitely fixed the tenancy expires *ex vi termini*, and notice to quit is unnecessary,    *   *   * unless he renews the tenancy, he knows it is plain duty to give up possession by returning the keys to the landlord at the end of the agreed term. The law imposes this duty upon him as the natural contemplated result of the contract under which he originally obtained his possession." In *Simmons* v. *Robertson*, 27 Ark. 50, it is held: "A tenant in possession is not at liberty to question the title of the person under whom he holds or attorn to a third person." And

again: "A tenant while the relation of landlord and tenant exists cannot rent from one who has acquired title hostile to that of his landlord, though it be a better title." And in *Bryan* v. *Winburn*, 43 *Id.* 28, it is held: "A tenant in possession cannot disclaim his landlord's title without surrendering possession to him. He cannot collude with and attorn to another to the prejudice of his landlord." *Wilson* v. *James*, 79 N. C. 349; *Hawes* v. *Shaw*, 100 Mass. 187; *Oaks* v. *Munroe*, 8 Cush. (Mass.) 282. JUDGE SNYDER in treating of this doctrine in *Vose* v. *King*, *supra*, at page 240, says: "This doctrine was unknown at the common law and is an estoppel *in pais*. The only tenant's estoppel known when Lord Coke wrote was that strictly by the indenture. But the tenant's estoppel is now no longer restricted, as it is founded on the possession and not on the instrument of demise, and is as operative after the conclusion of the lease as before, and until that possession is ended. It is only when there is fraud or mistake, in consequence of which one takes a lease of land that he will not be estopped by the lease. Taylor on Land. & Tent., section 89 & 707; Big. on Estop. 350; *Camrillo* v. *Folsom*, 49 Cal. 202; *Alderson* v. *Miller*, 15 Grat. 279; *Lock* v. *Frasher*, 79 Va. 409; *Dobson* v. *Culpepper*, 23 Grat. 352." In *Voss* v. *King*, JUDGE SNYDER in considering the question as to whether a tenant in possession could, by mere disclaimer and notice to his landlord, without an actual surrender of the premises, terminate his tenancy, after referring to the case of *Wilson* v. *Weathersby*, 1 Nott & McCord 373, as to the holding in that case on the question says: "The general rule seems to be that when the tenant disclaims to hold under his lease, and notice of this fact is brought home to the landlord, then the relation of landlord and tenant ceases, and the tenant becomes a trespasser and his possession is adverse, and the landlord may by action dispossess him without notice to quit. If the tenant, with notice to the landlord, disclaims the tenure and claims the fee adversely in right of himself or a third person, or attorns to another, his possession then becomes a tortious one by the forfeiture of his right, and the landlord's right of entry is complete, and he may sue at any time within the period of limitation from that time. *Willison* v. *Watkins*, 3 Pet. 43; *Kane* v. *Bloodgood*, 7 Johns. Chy. 90; Tyler on Eigel, 311; *Wild* v. *Surpell*, 10 Grat. 405; *Miller* v. *Williams*,

15 Grat. 213, 219; *Cooey* v. *Potter*, 22 W. Va. 120." In
*Botkin* v. *Arnold*, 45 W. Va. 90, (syl. pt. 3), it is held:
"Where a person claiming title takes a lease of the same land
under a different title in the absence of fraud or mistake, he
is estopped to deny his landlord's title or possession." And
in *Church* v. *Arkle*, 49 W. Va. 92, (syl. pt. 2): "In an
action of unlawful detainer by a landlord against a tenant
the tenant cannot deny the landlord's title." Counsel for
defendant rely particularly, upon said case of *Willison* v.
*Watkins*, and ask the especial attention of this Court to that
case in support of their position. In this case Justice Baldwin,
after stating the rule of estoppel precluding the tenant from
controverting landlord's title and creating because of the hard-
ship of that case the exception relied upon by plaintiff in error,
at page 53 says: "In case in 1 Nott & McCord, 374, the court
decide that where a defendant enters under a plaintiff, he shall
not dispute his title while he remains in possession, and that he
must first give up his possession, and bring his suit to try
titles. To the correctness of this principle we yield our as-
sent, not as one professing to be peculiar to South Carolina,
but as a rule of the common law applicable to the cases of
fiduciary possession before noticed. It is laid down as a
general rule embracing in terms tenants in common, trustees,
mortgagees and lessees, but disallowing none of the excep-
tions or limitations which qualify it, and exclude from its
operation all cases where the possession has become adverse,
where the party entitled to it does not enter or sue within
the time of the statute of limitations, or give any good rea-
son for his delay; leaving the rule in full force wherever the
suit is brought within the time prescribed by law." In that
case the statute of limitations was five years and as stated
in the syllabus, the act of limitations had run out four times
before the landlord had done any act to assert his right to
the land, and as the court said at page 49: "No injury can
be done the landlord unless by his own *laches*. If he sues
within the period of the act of limitations he must recover;
if he suffer the time to pass without suit it is but the com-
mon case of any other party who loses his right by negli-
gence and loss of time." There was no time lost in the case
at bar. The suit was brought within the same month in
which the lease of the defendant expired, and the acceptance

of a lease by the defendant Davis under the adverse title of Ashby *et al.* At the next succeeding term of the United States Supreme Court, after the decision of the case of *Willison* v. *Watkins*, Justice Baldwin delivering the opinion of the court in *Peyton* v. *Stith*, 5 Pet. 485, referring to his former opinion says: "In the case of *Willison* v. *Watkins*. (3 Peters, 44) decided at the last term, this court considered and declared the law to be settled, that a purchase by a tenant of an adverse title claiming under or attorning to it, or any other disclaimer of tenure with the knowledge of the landlord, was a forfeiture of his term; that his possession became so far adverse that the act of limitations could begin to run in his favor from the time of such forfeiture; and the landlord could sustain ejectment against him without notice to quit, at any time before the period prescribed by the statute had expired by the mere force of the tenure, without any other evidence than the proof of the tenancy; but that the tenant could in no case contest the right of his landlord to possesion, or defend himself by any claim or title adverse to him, during the time which the statute has to run.

"If the landlord suffers it to run out without making an entry or bringing a suit, each party may stand upon their right; but until then the possession of the tenant is the possession of the landlord.

"Tested by these principles, the purchase from Phillips in 1814 can have no effect on the merits of this case. Though the possession of Stith became from that time adverse for these specified purposes, it remained fiduciary for all others. He could not assert an adversary title without surrendering possession. The law recognizes him as having no rights of property in the lands unless such as grow out of his tenure; his title must remain dormant, while he retains possession for a less term than prescribed by law; it may become active whenever he abandons the possession, or it is protected by the limitation." *Wilds' Lessee* v. *Serpell*, 10 Grat. 405. The overwhelming weight of authorities sustain the proposition that a tenant taking possession of land under any person is not at liberty to question the title of the person under whom he holds, nor to attorn to a third person. The action of unlawful detainer is a purely possessory action and does not go to the title. It matters not to the tenant how the land-

lord came in possession, after accepting the possession under him the tenant cannot question his title and has no right to collude with persons out of possession in order to defeat the possession of his landlord; as is well said in *Simmons* v. *Robert-son, supra,* at page 54.     "If such sharp practice was tolerated by courts of justice this important possessory action would be worthless."   The facts in the case show, indeed it appears in the petition for writ of error in this case, that "The plaintiff claimed title to a tract of land in said county, and in May, 1902, rented a portion of said land to the petitioner from that date until the first day of March, 1903.    After this rental W. L. Ashby, E. T. Crawford and D. G. Courtney acquired title to a tract of land the lines of which latter tract covered the lands rented by your petitioner from said Stover;" and states that after the expiration of petitioner's lease with Stover he took a lease from said parties, and notified Stover of the fact that he was occupying said land as an agent of the other parties claiming that at the termination of his lease with Stover he could thus turn over the possession to the claimants of the hostile title.    As has been shown the relation of landlord and tenant did not cease to exist at the end of the time for which he had leased, if he remained in possession after that time it was the province of the plaintiff to treat him as a tenant or as a trespasser, at his option, in case he claimed to be holding adversely and under a hostile title. Section 211, chapter 50, Code, provides:    "If any forcible or unlawful entry be made upon land, or if, when the entry was lawful, the tenant detain possession of land after his right has expired, without the consent of him who is entitled to the possession, the party so turned out of the possession, no matter what right or title he had thereto, or the party against whom such possession is unlawfully detained, may commence suit to obtain possession of the land and damages for its detention, within two years after the cause of action accrues, before any justice of the county in which such land or the greater part thereof is situated."   This section is too plain to be misunderstood, that the action is simply for the possession to which the plaintiff is entitled and is entirely independent of the title to the land.    And section 217 specifically provides that the judgment in such suit "Shall not bar any subsequent action of ejectment brought by either

party." In a long line of decisions it has become a settled rule in this State that after the termination of a lease the landlord at his election may treat the tenancy as one at sufference, or the holding over as a trespass, and in either case the tenant in an action for possession is estopped to dispute the title of his landlord within the period of the statute of limitations.

There is no error in the judgment of the circuit court and the same is affirmed.

*Affirmed.*